**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

_____
                                         :
DEDMAS SANCHEZ,                          :
                                         :  Civil Action No. 09-5272 (RMB)
            Petitioner,                  :
                                         :
      v.                                 :         **O P I N I O N**
                                         :
JEFF GRONDOLSKY,                         :
                                         :
            Respondent.                  :
_____:

**APPEARANCES:**

Dedmas Sanchez, Pro Se
#59496-066
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640

**BUMB, District Judge**

   Petitioner Dedmas Sanchez, a prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The sole respondent is Warden Jeff Grondolsky.

---

   [1]  Section 2241 provides in relevant part:

   (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
                      ***
   (c) The writ of habeas corpus shall not extend to a

Because it appears from a review of the petition that Petitioner is not entitled to issuance of the writ, the Court will deny the petition.  See 28 U.S.C. § 2243.

## BACKGROUND

According to the petition, on June 5, 2006, Petitioner was convicted and sentenced to a 96 month term of imprisonment for conspiracy to sell heroin, and a consecutive 24 month term of imprisonment for possession of a firearm in furtherance of a drug trafficking crime, in the United States District Court, Eastern District of Pennsylvania.

Petitioner was ordered by the sentencing court to participate in the Residential Drug Abuse Program ("RDAP"). However, he was informed by the prison staff that due to his firearm offense, he would not be eligible for a sentence reduction if he successfully completed the RDAP.

Petitioner argues that he should be eligible for early release due to completion of the RDAP; that the BOP misinterpreted the early release statutes and are in violation of the Administrative Procedures Act ("APA"); that Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008), supports his position;

---

prisoner unless-... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ....

and that he is being denied due process and equal protection by being denied early release.

## DISCUSSION

### I. STANDARDS FOR A SUA SPONTE DISMISSAL

United States Code Title 28, Section 2243 provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970). Nevertheless, a federal district court can dismiss a habeas corpus petition if it appears from the face of the petition that the petitioner is not entitled to relief. See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989). See also 28 U.S.C. §§ 2243, 2255.

**II.    THE RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM**

In 1990, Congress required the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addition or abuse."  Crime Control Act of 1990, Pub. L. 101-647, § 2903, 104 Stat. 4789, 4913 (codified as amended at 18 U.S.C. § 3621(b)).  In 1994, Congress amended the statute to provide an incentive for prisoner participation.  The incentive provision reads:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, § 32001, 108 Stat. 1796, 1897 (codified at 18 U.S.C. § 3621(e)(2)(B)).

The Bureau published a regulation to implement the early release incentive one year later.  Congress did not define, by statute, the term "nonviolent offense."  By regulation and Program Statement, the Bureau determined to rely upon the definition of "crime of violence" contained in 18 U.S.C. § 924(c)(3).  Thus, the Bureau considered ineligible for early release those offenders convicted of a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or ... that by

its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." See 28 C.F.R. § 550.58 (1995); 60 Fed. Reg. 27,692, at 27,695; BOP Program Statement No. 5162.02, § 9 (July 24, 1995).

Following the promulgation of the 1995 regulation, various Courts of Appeals reached differing conclusions on the question of whether the Bureau had discretion to further define a crime of violence as an offense involving a firearm, and thus exclude from eligibility for the early release incentive those prisoners who were incarcerated for such offenses. See generally Lopez v. Davis, 531 U.S. 230, 234-35 (2001).

In light of the split among the circuits, the Bureau promulgated an interim regulation on October 15, 1997, and made the regulation effective approximately one week prior, on October 9, 1997. See 28 C.F.R. § 550.58(a)(1)(vi)(B) (1997); 62 Fed. Reg. 53,690. The 1997 interim regulation, like the one it superceded, made ineligible for the early release incentive those prisoners incarcerated for an offense that involved the possession, use, or carrying of a firearm. See 28 C.F.R. § 550.58(a)(1)(vi)(B) (1997). The 1997 interim regulation differs from the 1995 regulation by relying on "the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude [enumerated categories of] inmates," 62 Fed.

5

Reg. at 53,690, rather than purporting to define the statutory terms "prisoner convicted of a nonviolent offense" or "crime of violence."

In <u>Lopez v. Davis</u>, the Supreme Court held that the 1997 interim regulation's categorical exclusion of prisoners based on their involvement with firearms in connection with the commission of a felony was a permissible exercise of the Bureau's discretion.

> According to the Bureau, Congress simply "did not address how the Bureau should exercise its discretion within the class of inmates who satisfy the statutory prerequisites for early release." Because Congress left the question unaddressed, the Bureau maintains, the agency may exclude inmates either categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, see <u>Chevron</u>, 467 U.S. at 844, in a manner that is not arbitrary or capricious, <u>see</u> 5 U.S.C. § 706(2)(A). In this instance, the Bureau urges, it has acted reasonably: its denial of early release to all inmates who possessed a firearm in connection with their current offense rationally reflects the view that such inmates displayed a readiness to endanger another's life; accordingly, in the interest of public safety, they should not be released months in advance of completing their sentences.
>
> We agree with the Bureau's position....
>
> ... [W]e further hold that the regulation excluding Lopez is permissible. The Bureau reasonably concluded that an inmate's prior involvement with firearms, in connection with the commission of a felony, suggests his readiness to resort to life-endangering violence and therefore appropriately determines the early release decision.

<u>Lopez</u>, 531 U.S. at 239-40, 244 (citation and footnotes omitted). The Court declined to consider the arguments of various amici

6

that the 1997 interim regulation violated the notice-and-comment provisions of the APA, as that argument had not been raised or decided below, or presented in the petition for certiorari. Lopez, 531 U.S. at 244 n.6.

The commentary accompanying publication of the 1997 interim regulation recited the history surrounding the Bureau's previous attempts to regulate in this area, including the 1995 interim regulation, which attempted to define the term "crime of violence," and the subsequent split of authority among the federal courts regarding that regulatory definition.  The commentary further noted that the Bureau was "publishing this change as an interim rule in order to solicit public comment while continuing to provide consideration for early release to qualified inmates."  62 Fed. Reg. at 53,690.  Nevertheless, the effect of the implemented interim regulation was to deny program eligibility to certain categories of inmates confined at that time and until promulgation of a final regulation.  The commentary to the interim regulation further provided that comments on the interim rule were due on December 15, 1997, and that the comments would be considered before final action was taken.

Three years later, on December 22, 2000, the Bureau replaced the 1997 interim regulation with a final regulation, which adopted the 1997 interim regulation without change.  See 65 Fed.

7

Reg. 80,745. The final regulation was effective as of December 22, 2000. See id. The commentary accompanying the final regulation noted that the Bureau had received and considered approximately 150 comments from individuals and organizations, 138 of which were identical. See id. at 80,747. Thus, the final regulation read, in pertinent part, as follows:

> Consideration for early release.
>
> An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.
>
> (a) Additional early release criteria.
>
> (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:
>
> ...
>
> (vi) Inmates whose current offense is a felony:
>
> ...
>
> (B) That involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device), ...

5 U.S.C. § 550.58 (2000). The regulation has remained unchanged since 2000.

The Administrative Procedure Act ("APA") requires, with exceptions not relevant here, that proposed rules be published in the Federal Register, not less than 30 days before the proposed rule's effective date, and provide a period for interested persons to comment on the proposed rule, which comments are to be considered by the agency prior to adopting the rule.  See 5 U.S.C. § 553(b), (c), (d).

Following promulgation of the 1997 interim regulation, the United States Court of Appeals for the Ninth Circuit determined that the 1997 interim regulation was invalid, for failure to follow the notice-and-comment requirements of the APA.  See, Paulsen v. Daniels, 413 F.3d 999 (9th Cir. 2005).  The 2000 final rule, however, complied with the notice-and-comment requirements.

More recently, the Court of Appeals for the Ninth Circuit has held that the final 2000 rule is invalid, nevertheless, as "arbitrary and capricious" in violation of § 706(2)(A) of the APA, 5 U.S.C. § 706(2)(A), for failure to set forth a rationale for its categorical exclusion rule.  See Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008).

In Arrington, the Ninth Circuit held that the Bureau's promulgation of § 550.58 was "arbitrary and capricious" because the Bureau failed to state, in the administrative record, an adequate rationale for its categorical exclusion of felons

9

convicted of crimes that involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives.

> A general desire for uniformity provides no explanation for why the Bureau exercised its discretion to achieve consistency through the promulgation of a categorical exclusion rule. The Bureau's stated desire for uniformity could have been accomplished in any number of ways. For example, the Bureau could have achieved uniformity by categorically including prisoners with non-violent convictions involving firearms, thus making them eligible for early release: a result that would have been entirely consistent with the statute's aim of offering incentives for prisoner participation in residential substance abuse programs. Instead, it chose to achieve uniformity by categorically excluding such prisoners from eligibility. Although either choice in all likelihood would have withstood judicial scrutiny, the Bureau offered no explanation for why it exercised its discretion to select one rather than the other. The agency's lack of explanation for its choice renders its decision arbitrary and capricious.

Arrington, 516 F.3d at 1114 (citation omitted).  The Ninth Circuit refused to consider the offered rationale that offenders with convictions involving firearms pose an increased risk to the public.  The public safety rationale, the Ninth Circuit concluded, was not stated in the record and was merely a post hoc rationalization.

It is upon the Arrington decision that Petitioner relies here.

III. **THE PETITION MUST BE DISMISSED.**

Petitioner contends, pursuant to the Arrington decision, that the 2000 final rule violates the APA proscription against arbitrary and capricious agency action.  Thus, Petitioner

contends that his categorical exclusion from consideration for early release, pursuant to the 2000 final rule, was unlawful.

The Court of Appeals for the Third Circuit has recently rejected Arrington, as have all other circuit courts considering the issue. See Snipe v. Dept. of Justice, 2008 WL 5412868 (N.D. W. Va. Dec. 23, 2008) (collecting cases). In Gardner v. Grandolsky, 585 F.3d 786 (3d Cir. 2009), the Court of Appeals examined Petitioner's challenge to the BOP regulation categorically excluding felons whose offense involved possession of firearms from early release based upon participation in RDAP. The Court of Appeals concluded that "the BOP articulated a sufficient rationale for 28 C.F.R. § 550.58(a)(1)(vi)(B) (2000) to satisfy the 'arbitrary and capricious' standard set forth in APA § 706(2)(A). Although the BOP's public safety rationale was not explicit in the Federal Register notices for the 1997 or 2000 regulations, we conclude that the rationale may 'reasonably be discerned' from the regulatory history and attendant litigation." Gardner, 585 F.3d at 792 (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) and Gatewood v. Outlaw, 560 F.3d 843, 847 (8th Cir. 2009)). The Court of Appeals went on to hold:

> . . . the BOP's efforts to categorically exclude felons convicted of possession of a dangerous weapon from eligibility for early release have remained consistent since 1995. The BOP amended the 1995 version of its regulation only because it could no longer uniformly apply it after the split among the Courts of Appeals

> developed concerning the BOP's Program Statement; the BOP expressly referred to the Circuit split in both its 1997 and 2000 Federal Register notices. Because the litigation focused on the BOP's Program Statements, we find it both reasonable and appropriate to consider the Program Statements when discerning the agency's rationale for promulgating the 1997 and 2000 regulations.
>
> The BOP Program Statements expressly provide that the BOP's contemporaneous rationale for the categorical exclusion has consistently been for the purpose of protecting public safety. Courts reviewing the regulation have long recognized the BOP's public safety rationale. See, e.g., Pelissero[ v. Thompson], 170 F.3d [442, ] 445 [4th Cir. 1999] (quoting the district court's conclusion that it is "entirely reasonable and certainly not arbitrary for the BOP to equate gun possession and drug dealing with violence, thus supporting its interpretation of not being a 'nonviolent offense' "); Venegas v. Henman, 126 F.3d 760, 765 (5th Cir. 1997) (the BOP's "determination that a sufficient nexus exists between the offenses at issue and a substantial risk of violence is a valid exercise of discretion which this Court will not disturb").

Gardner, 585 F.3d at 792 (internal citations omitted). Furthermore, the Court of Appeals found that the Arrington court discounted the aspect of Lopez, which upheld the reasonableness of the 1997 interim regulation and the public safety rationale asserted by the BOP. See id. at 792-93. Additionally, the Court of Appeals asserted that, "the language of the regulation itself facially manifests a concern for protecting the public safety," and explained that the regulation denied eligibility for early release to other categories of prisoners who committed crimes demonstrating a potential for violence, including homicide, rape

robbery, etc. See id. at 793 (citing 28 C.F.R. § 550.58(a)(1)) (other citation omitted).

Therefore, based upon the Gardner case, Petitioner is not entitled to relief on this claim.

Furthermore, this Court finds no merit in Petitioner's claims that his Equal Protection and Due Process rights have been violated. First, this Court notes that Petitioner does not have a liberty interest in a reduction of his sentence under 18 U.S.C. § 3621(e). See Magnin v. Beeler, 110 F. Supp.2d 338, 340 n.2 (D.N.J. 2000). Second, Petitioner's argument that his Equal Protection rights have been violated also fails. Petitioner contends that his equal protection rights come into play because "The Petitioner and his brother were both guilty of a firearm offense . . . . The federal crime was committed in New Jersey. Petitioner's brother is sent to a federal prison in the 9th Circuit and Petitioner is housed at Ft. Dix, New Jersey. If the brothers successfully complete the RDAP, Petitioner's brother will receive early release, but Petitioner will not. This scenario illustrates how the BOP is violating the Petitioner's Fifth . . . Amendment rights." (Petition, p. 5).

The equal protection clause guarantees that "all persons similarly circumstanced shall be treated alike." Plyler v. Doe, 457 U.S. 202, 216 (1982); City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). The equal protection clause

13

does not, however, require "things which are different in fact or opinion to be treated in law as though they were the same." Plyler, 457 U.S. at 216 (quoting Tigner v. Texas, 310 U.S. 141, 147 (1940)).  Thus, "for purposes of imprisonment and parole, 'the class to which [an inmate] belongs consists of the persons confined as he was confined, subject to the same conditions to which he was subject.'"  Moss v. Clark, 886 F.2d 686, 691 (4th Cir. 1989)(quoting Koyce v. United States Bd. of Parole, 306 F.2d 759, 762 (D.C. Cir. 1962), and citing Bates v. Wilkinson, 267 F.2d 779 (5th Cir. 1959) (military prisoners in federal prison not denied equal protection when subject to laws pertaining to other federal prisoners)).  The Court also notes that prisoners are not a suspect class, as "the status of incarceration is neither an immutable characteristic, nor an invidious basis of classification."  Moss, 886 F.2d at 690 (internal citations omitted).

In this case, Petitioner has not demonstrated that he was treated differently than other prisoners confined in the district who were found ineligible for early release after completion of RDAP due to firearm offenses.

**CONCLUSION**

For the reasons set forth above, the petition will be dismissed with prejudice. An appropriate order follows.


                                    s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    United States District Judge

Dated: December 31, 2009

15